**In the Matter of Harry G. LITT, individually and trading as People's Market, Bankrupt.**
**No. 23458.**

United States District Court,
E. D. Pennsylvania.
Jan. 27, 1955.

W. Wilson White, U. S. Atty., and Francis Ballard, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

Benjamin H. Levintow, Philadelphia, Pa., for landlord.

CLARY, District Judge.

Harry G. Litt, bankrupt herein, trading as People's Market, conducted a retail food store at premises 7145–47 Germantown Avenue, Philadelphia, Pennsylvania, under the terms of a written lease dated August 1, 1947, providing for a yearly rental of $5,500 payable in monthly sums of $458.33 in advance on the 1st day of each month. As of April 30, 1951 the bankrupt was in arrears in rent for three full months, being the rent due February 1, 1951, March 1, 1951 and April 1, 1951, in a total amount of $1,374.99. On that date, April 30, 1951, the landlord caused a distraint to be made, the Constable distrained and levied upon and seized all of the goods and chattels on the demised premises. On May 5, 1951, following the distraint, the bankrupt paid the landlord, on account, one month's rent, which was credited against the distrained amount and reduced the said amount to $916.66. The distraint remained in force and effect until a petition in bankruptcy was filed on May 14, 1951, after which time the goods and chattels came into the possession of the Bankruptcy Court. In the bankruptcy proceedings the landlord claimed a preference for the amount of the distraint and was supported in his claim by the Referee. The United States brought a Certificate of Review challenging the correctness of the award and claimed it was entitled to preference over the landlord's claim on its claim for unpaid taxes, which claim was disallowed by the Referee.

The bankrupt, in the year previous to bankruptcy, fell in arrears in the payment of certain income withholding and Federal insurance contributions due for the third quarter of 1950. When these taxes became delinquent the Commissioner included them in an assessment list which was received at the office of the Collector (now Director) of Internal Revenue for the First Collection District of Pennsylvania on December 26, 1950. The amount assessed was $3,286.23, subsequently reduced by payment on account to $3,161.23. After receiving the assessment list, the Collector's office sent its first notice (Form 17) to the bankrupt by mail on January 5, 1951; the second notice (Form 21) was mailed to the bankrupt by the Collector on February 9, 1951, and a warrant of distraint (Form 69) was issued on March 7, 1951. The undisputed facts indicate that the last document, the warrant of distraint, was never served. The balance of the fund realized from the public sale of the assets by the Receiver in bankruptcy is not sufficient to pay and discharge both the claim of the landlord and the claim of the Government, the amount available for that purpose being approximately $3,000.

The contention of the landlord before the Referee was that under the Internal Revenue laws and under the laws of the Commonwealth of Pennsylvania he had obtained a lien prior to bankruptcy against specific goods and chattels of the bankrupt (a specific lien) to which lien the claim of the Director of Internal Revenue (a general lien holder) was subordinated; further, that since he had distrained prior to bankruptcy, he should

also be considered a judgment creditor or a purchaser and thus fall within the protection of Section 3672(a) of the Internal Revenue Code, 26 U.S.C. § 3672 (a). Despite vigorous opposition on the part of the United States Attorney, the Referee sustained all contentions of the landlord and awarded the landlord his claimed preference over the claim of the United States. It should be stated at this point that the award made by the Referee was prior to the decision of the United States Supreme Court in the case of United States of America v. Scovil, 75 S.Ct. 244, and hereafter referred to.

The applicable provisions of the Internal Revenue Code under which this case must be decided are Sections 3670, 3671 and 3672(a) [1] which read as follows:

§ 3670. *Property subject to lien.*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

§ 3671. *Period of lien.*

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

§ 3672(a). *Invalidity of lien without notice.*

"Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) *Under State or Territorial laws.*

"In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory; * * *."

 As stated by the Referee in his opinion, this precise question had, at the time he filed the opinion, never been passed upon in any reported Federal case, either in this district or elsewhere. Giving effect to the general principles of law covering priority of liens, namely, that a specific lien is superior to a general lien, he concluded that the claimed preference of the landlord should be granted. He held, in effect, that since there was a valid distraint outstanding at the time of bankruptcy, the amount due under the distraint never actually came into the legal possession of the trustee in bankruptcy. Another basis of the Referee's decision was that under common law and the landlord and tenant law of Pennsylvania a landlord who distrains on the goods of a tenant and no action is taken by the tenant within five days to replevy the goods is permitted to expose the goods to public sale. Such sale carries good title under Pennsylvania law in the same degree that a sale under judicial process would carry good title. To that extent, at least, since the rights of the landlord approximate the rights of the judgment creditor, the Referee concluded that the landlord could be considered a judgment creditor.

The precise question involved in this case has been settled by the Supreme Court of the United States. The facts of the Scovil case, supra, which are very similar to the facts of the instant case, are reported at 1954, 224 S.C. 233, 78 S.E.2d 277. The case involved a dis-

---

1. Sections 3670, 3671 and 3672(a) were re-enacted as Sections 6321, 6322 and 6323(a) of the Internal Revenue Code of 1954, Public Law 591, 26 U.S.C., approved August 16, 1954.

tress under South Carolina law by a landlord on a corporate tenant's assets for arrearages in rent of an insolvent tenant made before the appointment of a receiver because of insolvency. The lower court held that the landlord's lien was perfected under the laws of South Carolina, that the amount specified in the distraint was not available to the receiver to pay other debts of the tenant, and rejected the Government's claim of preference. The chronological sequence in that case was as follows. The assessment lists involving the claimed taxes of the government were received by the Collector on March 19, 1951, May 24, 1951, August 29, 1951, December 3, 1951, February 23, 1952 and February 28, 1952. The landlord's distress was filed on April 7, 1952 in the Courts of Common Pleas, South Carolina. The next day a Receiver was appointed for the business and on April 10, 1952 the Collector filed the aforesaid liens in the proper office for the recording of liens in the State Court of Greenville County, South Carolina, the business situs of the bankrupt. The Supreme Court of South Carolina held that since the lien had been perfected under State law, the government could have no greater right in the property in the hands of the Receiver than the insolvent. It further held that the government liens were not valid as against the landlord until properly recorded under the provisions of Section 3672(a). The United States Supreme Court rejected these contentions and reversed.

The only difference to be noted in the facts of the Scovil case, supra, as compared with those in the instant case is that under South Carolina law the tenant had a five day period to recover the property by posting bond in the amount of the distraint. The decision of Mr. Justice Minton noted these facts and concluded that the claimed lien actually was in the nature of a caveat of a more perfected lien to come, since the tenant had the five day period from April 7 to enter the bond, which period had not expired when the Collector recorded his liens. The law of Pennsylvania has no comparable provision although it does provide that within five days from a distraint the tenant may, under the common law writ of replevin, recapture his goods by posting bond. 68 P.S. § 250.-306, Act of April 6, 1951, P.L. 69, Art. III, Sec. 306. Also, in the instant case, there is no showing that the Collector ever recorded the liens in the Courts of Common Pleas of Philadelphia County. Upon careful analysis of the Scovil case, however, I do not consider that these differences in fact are controlling and a different result warranted.

■ The problems faced by the landlord in this case, as properly suggested in the Government's brief, are that he must either show that the exception clause of Section 3672(a) is broader than it appears on a literal reading of the section or that, as a distraining landlord, he falls within one of the four categories there listed. An examination of the legislative history of Sections 3670, 3671 and 3672 make it clear that Congress originally intended the lien of the government for unpaid taxes to be paramount upon all property and rights to property, real or personal, belonging to the taxpayer in default. The earliest tax lien Act was that of July 13, 1866, 14 Stat. 107, amended by the Act of March 1, 1879, 20 Stat. 331. That Act fixed the time of the lien as the time when the assessment list was received by the Collector of the district. The decision of the Supreme Court of the United States in United States v. Snyder, 1892, 149 U.S. 210, 13 S.Ct. 846, 37 L. Ed. 705, interpreted the aforementioned section, R.S. § 3186, and held that the Federal tax lien was so broad as to continue to attach to property even in the hands of a bona fide purchaser who had no notice of the existence of the lien. To remedy this obviously harsh and unfair situation, Congress on March 4, 1913, at 37 Stat. 1016, amended the section by providing that the lien should not be valid against any mortgagee, purchaser or judgment creditor until notice thereof had been filed in accordance with

other provisions of the amendment. It was not until the Act of June 29, 1939, 53 Stat. 882, that the word "pledgee" was included among those protected to relieve another obviously unfair situation; see the concurring opinion of Mr. Justice Jackson in United States of America v. Security Trust and Savings Bank, 1950, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53. It is clear, therefore, that the protective provisions of Section 3672(a) are to be strictly, rather than liberally construed as contended for by the landlord in this case. It is equally clear that in order to be protected, the claimant must show that he is within the protection of one of the four classes named, Filipowicz v. Rothensies, D.C.E.D.Pa.1942, 43 F.Supp. 619.

■ With respect to the contention that the landlord in this case can be considered a judgment creditor, the case of United States v. Gilbert Associates, Inc., 1952, 345 U.S. 361, 73 S.Ct. 701, 703, 97 L.Ed. 1071, is controlling. In that case, a New Hampshire town had filed a tax assessment under New Hampshire law against certain property which assessment under New Hampshire law was "'in the nature of a judgment'". The court held that the words "judgment creditor" in Section 3672(a) were used by Congress in the usual conventional sense of a judgment of a court of record. I can see no difference in the position of the landlord in this case and the claimant in the Gilbert Associates, Inc. case, supra. The landlord in this case was not a judgment creditor in the usual conventional sense of a judgment of a court of record.

■■ As to the contention that the landlord in this case might be "a purchaser" under the facts of this case, which contention seems to have been given considerable weight by the Referee in his opinion, the opinion of Mr. Justice Minton in the Scovil case, supra, is completely dispositive. There, as here, the lower court substantially adopted that position. Mr. Justice Minton interpreted the word "purchaser" within the meaning of Section 3672(a) as one who ac-

quires title for a valuable consideration in the manner of vendor and vendee and that the landlord in that case, who had—as here—distrained for rent, was not and could not be a purchaser under the terms of that section. It is not contended in this case that the landlord is either mortgagee or pledgee. Consequently, the landlord's lien must be held subordinate to the general lien of the United States obtained under the provisions of Section 3670. It follows, therefore, that the award of the preference to the landlord over the Government's claim must be set aside and the action of the Referee reversed.

An appropriate order will be entered.