**Jennie REITER, Plaintiff,**

v.

**Margaret R. KILLE, William A. Mousley, also known as W. Ashton Mousley, Borough of Folcroft, Clifton Heights National Bank, Alexander F. Porter, Elizabeth M. Hunlock and Fred S. Hunlock, James J. Kelly and United States of America, Defendants.**

Civ. A. No. 19260.

United States District Court
E. D. Pennsylvania.

Aug. 30, 1956.

James N. Robertson, Media, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., for defendant United States.

CLARY, District Judge.

This is an action to quiet title to real estate brought by the plaintiff against various defendants including the United States of America. The matter is presently before the Court on cross motions for summary judgment filed by the plaintiff and the defendant, United States of America.

This action was originally instituted in the Court of Common Pleas of Delaware County, Commonwealth of Pennsylvania, and was removed to this Court upon a petition for said removal by the United States of America under the authority granted by 28 U.S.C.A. § 1444. Originally the complaint named 9 defendants and service was made upon all said 9 defendants by the Sheriff of Delaware County. With the exception of the Borough of Folcroft and the United States of America, no appearances were entered or answers filed on behalf of the remaining defendants. The facts giving rise to this action are as follows:

Prior to May 1, 1940, two lots situated in the Borough of Folcroft, Delaware County, Commonwealth of Pennsylvania, known as lots Nos. 237 and 238 Charmount Avenue, (hereinafter collectively referred to as the "property") were owned by Frank Briggs, Jr. Because of a delinquency in real estate taxes, on that date the property was sold at public sale by the Treasurer of Delaware County to the Commissioners of the said County for the sum of $30.18, the amount of the delinquency. A deed from the Treasurer to the Commissioners was thereafter recorded in the Office of the Recorder of Deeds of Delaware County. On May 27, 1947 the Commissioners of Delaware County sold the property at public sale to William A. Mousley for the sum of $215.-29. The deed evidencing this transaction was never recorded as provided by the Pennsylvania Statute, but a copy thereof was found filed among the records of the said County Commissioners.

On October 19, 1949 the United States of America filed a Federal Tax Lien against W. Ashton Mousley in the amount of $65,739.92 in Federal Tax Lien Docket No. 1, Page 71, in the office of the Prothonotary of Delaware County. The defendant, United States of America, as part of its motion for summary judgment, filed an affidavit on information and belief that W. Ashton Mousley and William A. Mousley were one and the same person. Since no one has seriously controverted that assertion, for the purposes of this opinion the Court will consider that they are one and the same person.

Approximately one month after the filing of the aforesaid lien, on November 14, 1949, the Treasurer of Delaware County sold the property at public sale, not as the property of William A. Mousley but as the property of Frank Briggs, Jr., to one William Reiter for the sum of $36.87, the amount due for delinquent Delaware County 1947 real estate taxes. The deed evidencing this transaction was recorded on November 27, 1951 in Deed Book No. 1481, Page 363, in the Office of the Recorder of Deeds of Delaware County. William Reiter died intestate on November 6, 1950, and his interests in the said property by adjudication of the Orphans Court of Delaware County vested in his widow, Jennie Reiter, plaintiff herein.

It is the contention of the plaintiff that the lien of the United States did not attach to the property because Mousley's ownership of the property never appeared of record in the Office of the Recorder of Deeds and that by purchase plaintiff's predecessor in title took it free and clear of the Government's lien. On the other hand, the Government asserts in its affidavit that in the records of Delaware County there was evidence of the sale to Mousley; that a minimal amount of investigation in connection with the tax sales would have disclosed Mousley's ownership and, therefore, the Court should determine that the plaintiff

had constructive notice of the existence of the lien and that the property was purchased subject to the Government's lien.

In the recent case in Matter of Litt, D.C.1955, 128 F.Supp. 34, this Court had occasion to review the scope of Sections 3670 and 3672 of the Internal Revenue Code, 26 U.S.C.A. §§ 3670, 3672. It was therein determined that it was necessary for any litigant asserting the invalidity of a Federal tax lien to bring himself within the scope of the exempted classes (mortgagee, pledgee, purchaser or judgment creditor) and have such status before the filing of the Government's lien in accordance with the laws of the state or territory in which the property subject to the lien is situated.

Sections 3670 and 3672(a) of the Internal Revenue Code were reenacted as Sections 6321 and 6323(a) of the Internal Revenue Code of 1954, Public Law 591, approved August 16, 1954, and read as follows:

§ 3670. Property subject to lien.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

§ 3672(a). Invalidity of lien without notice.

"Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws.

"In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; * * *."

While the courts in several cases have passed upon the question of the validity of a tax lien, see Investment & Securities Co. v. United States, 9 Cir., 1944, 140 F. 2d 894 and United States v. Maniaci, 6 Cir., 1940, 116 F.2d 935, affirming D.C. Mich.1939, 36 F.Supp. 293, the exact point raised in this case was not involved. No decided cases touching this point have been brought to the attention of the Court. The precise problem involved in this action is whether a notice of a tax lien against an intervening purchaser who never recorded his deed is effective against a subsequent purchaser at a public tax sale.

The laws of Pennsylvania are very explicit as to the manner in which a deed is to be recorded; Act of 1925, P.L. 613, as amended by the Act of 1931, P.L. 558, 21 P.S. § 351. The pertinent parts of the statute read as follows:

"All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situated in this Commonwealth * * * shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed * * * which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser * * * without actual or constructive notice unless such deed * * * shall be recorded, as aforesaid, before the recording of the deed * * * which said subsequent purchaser * * * shall claim. * * *"

As set forth in the commentary of Title 21 of Purdon's Statutes, the primary purpose of the recording statute and intention of the legislature is set forth as follows:

"The primary purpose of recording a deed 'is to give public notice in

whom the title resides; so that no one may be defrauded by deceptious appearance of title.' For this reason recording is obligatory, on peril of having an unrecorded deed adjudged fraudulent and void as against subsequent purchasers, mortgagees and creditors".

 It is clear that Congress in enacting Section 3672 of the Internal Revenue Code intended to give effect to the recording statutes of the several states. Therefore, in interpreting the law the Court must give effect to the State recording requirements so long as they are reasonable; Investment & Securities Co. v. United States, supra; United States v. Beaver Run Coal Co., 3 Cir., 1938, 99 F. 2d 610. If the Court should fail to give effect to the recording statutes of Pennsylvania under the facts of this case it would destroy the primary purpose of the recording statutes of Pennsylvania. An unrecorded deed in the Commonwealth of Pennsylvania is ordinarily presumed to be fraudulent and void as against subsequent purchasers for value. The present owner's predecessor in title, following the usual procedure in a search of title under Pennsylvania law and practice, was entitled to rely upon observance of the Recording Act by any intervening purchaser. To require the plaintiff in this case to make a further investigation dehors the record would defeat rather than give effect to the intention of Congress in passing Section 3672 of the Internal Revenue Code; United States v. Beaver Run Coal Co., supra. See also Heyward v. United States, 5 Cir., 1924, 2 F.2d 467; In re Glover-McConnell Co., D.C.Ga.1925, 9 F.2d 683; United States v. Maniaci, supra.

In the case of Murdock Acceptance Corp. v. United States, 350 U.S. 488, 76 S.Ct. 536, decided March 26, 1956, petitioner, a finance company which had accepted an assignment of a conditional sales contract when the automobile was purchased, sought remission of a for-feiture to the Government for violation of the liquor laws to the extent of its interest under 18 U.S.C.A. § 3617. That section provides that in forfeiture proceedings the District Court shall have exclusive jurisdiction to remit the forfeiture, but that the Court "shall not allow" remission unless the finance company acquired its interest in good faith, had no reason to believe that the automobile would be used in violation of the liquor laws, and finally had made inquiry at one of several offices including the sheriff, chief of police, principal Federal Internal Revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality as to whether the purchaser had a record or reputation for violating laws of the United States, or of any State relating to liquor. Petitioner in that case had made timely inquiry regarding the purchaser of the automobile to the State office of the Federal Alcohol and Tobacco Unit from which it received a reply that the purchaser had no record with that office as a liquor law violator. The answer also disclaimed knowledge of the purchaser's reputation among State and local officers. In reversing a forfeiture the Court stated that the very purpose of prescribing in detail in the statute the type of inquiry to be made was to avoid uncertainty over the extent of investigation necessary to protect finance companies against forfeitures. While not in point, by analogy it would seem that the responsibility of purchaser's predecessor in title here was fully satisfied in making an investigation of the records of the Recorder of Deeds only. No further investigation was required by Pennsylvania law and practice. The tax lien of the Government never attached to the property here involved and plaintiff herein is entitled to judgment in her favor upon her motion for summary judgment.

An appropriate decree in favor of the plaintiff may be submitted.