Wheatcroft, Appellant, *v.* Albert Company.

Argued November 17, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Harry L. Rossi,* with him *Maurice M. Green,* for appellants.

*Robert K. Greenfield,* with him *Bernard M. Guth,* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, April 17, 1962:

This appeal involves the ownership of 21 lots of land in a subdivision, known as "The Castor Highlands Subdivision", located in northeast Philadelphia.

On June 1, 1923 one Louis Green and Annie Green, his wife, sold a tract of land in northeast Philadelphia and title thereto was taken in the name of John F. Brown, Jr. (Brown). At that time Brown was an em-

ployee in the office of Albert M. Greenfield & Co., now Albert Company (Albert). The tract of land was later subdivided into 1496 lots all of which were eventually sold with the exception of 21 lots. In the conveyance of all these lots Brown executed all the deeds, including a deed of conveyance of 943 of these lots to Oxford Realty Company (Oxford).

When Brown died, intestate, in 1927 these 21 lots were still recorded in his name. Surviving Brown were his father, who died in 1944, his mother, who died in 1949, and his wife, Winifred Brown, who died September 16, 1954. When Winifred Brown died she was survived by two nephews and a niece. Fifteen days after her death a deed purporting to convey a one-half interest[1] in the 21 lots was recorded. This deed was signed by Winifred Brown's heirs—her nephews and niece— and the grantees were Raymond Wheatcroft and Norman G. Rosengarten (Wheatcroft-Rosengarten).[2]

Later on at a sheriff's sale for delinquent taxes, 9 of these lots were sold to one Donald Goldberg and Albert petitioned to redeem these lots claiming that it was the real owner.[3] After a hearing, the Court of Common Pleas of Philadelphia County permitted Al-

---

[1] If Brown had title to these lots then upon his death one-half of his interest therein went to Winifred Brown and the other one-half to his surviving parents.

[2] Sometime after this deed, Albert instituted an action to quiet title in the Court of Common Pleas No. 6 of Philadelphia County. In that suit Albert alleged that, when this tract of land was purchased in 1923 and title taken in Brown's name, Brown was acting as a straw man for Albert: that in 1923 Brown executed and delivered a deed to Albert for these 21 lots which had been lost; that Albert was the real owner of these lots; that Wheatcroft-Rosengarten, nominees of one Maurice Green, knew that Brown, in the purchase of these lots, acted as a straw man for Albert; that the purchase of the interest in these lots by Wheatcroft-Rosengarten was not in good faith. Apparently, this action is still pending.

[3] Wheatcroft-Rosengarten was not a party to this proceeding eo nomine.

bert to redeem these lots and directed that Goldberg convey these lots to Albert, which conveyance took place.

Wheatcroft-Rosengarten then instituted an action to quiet title in the Court of Common Pleas No. 4 of Philadelphia County against Albert. Upon issue joined,[4] the matter came for trial before Judge THEODORE L. REIMEL, without a jury, and the court, after hearings, found that title to these lots was in Albert and not in Wheatcroft-Rosengarten. From a final decree upholding the action of the trial court this appeal was taken.

At issue are two questions: (1) did Brown, by a deed in 1923, convey to Albert the title to the 21 lots, said unrecorded deed now being lost?; (2) if Brown did, are Wheatcroft-Rosengarten, under the recording statutes, purchasers in good faith protected against this unrecorded deed?

In passing upon the issues of this appeal we are bound to follow the rule that the findings of fact made by the trial judge, confirmed by the court en banc, have the weight of a verdict by a jury and cannot be disturbed on appeal unless such findings lack sufficient and competent evidential support: *Erie Coach Co. v. Erie Bus Co.*, 399 Pa. 76, 160 A. 2d 405; *Yenchko v. Grontkowski*, 385 Pa. 272, 122 A. 2d 705.

Was there sufficient competent proof of the existence of a deed executed and delivered by Brown to Albert in 1923?

Certain facts appear uncontradicted: (1) when the land, later known as Castor Highlands, was purchased in 1923 the title thereto was taken in the name of Brown; (2) the entire purchase price for this land was

---

[4] Albert filed an answer to the complaint and also a counterclaim. To the counterclaim Wheatcroft-Rosengarten filed an answer.

paid by Albert; (3) at that time and for several years thereafter Brown was an employee of Albert; (4) with the exception of the 21 lots all the rest of the land was sold and title conveyed to various purchasers by deeds executed by Brown; (5) from 1925 to 1929 the real estate taxes on the 21 lots were paid by Albert; (6) at least one employee of Albert, James Reekie, made an extensive search for the allegedly lost deed.

In addition, the court found the following facts: (a) when Brown took title to the land he did so as a straw man for Albert; (b) in 1923 Brown, then single, executed a deed, acknowledged by a notary in Albert's office, conveying title to the 21 lots to Albert; (c) this deed was delivered to Albert's president, Albert M. Greenfield and never recorded; (d) a diligent search was made for this deed but it was not located; (e) the deed is lost. From these facts the court concluded that, prior to his death in 1927, Brown, by deed, had conveyed the title to these 21 lots to Albert and, therefore, through the 1954 deed to Wheatcroft-Rosengarten from the nephews and niece of Winifred Brown the former received no title to these lots.

The burden was upon Albert to prove by competent evidence that the deed had been executed by Brown and delivered to Albert, that the deed did convey the 21 lots in question, that the deed had been lost and that the title to these lots remained in Albert: *Mahoney v. Collman*, 293 Pa. 478, 482, 143 A. 186. In this connection the testimony of Robert Wiser, employed by Albert from 1920 to 1941 and now self-employed, is most important. Wiser testified that he was a clerk in Albert's conveyancing department in 1923 and, at that time, Brown was a clerk in the leasing department; that he was present at the sale at which the entire tract of land was sold and that he knew that title thereto eventually was taken in the name of Brown, even though he knew that Brown had contributed nothing

to the purchase price; that it was part of his duties to have deeds executed by Brown; that in 1923 Mr. Greenfield gave him two deeds to have executed by Brown and notarized by Russo, another Albert employee; that one deed was for the sale of lots to Oxford Realty Company and *the other for the sale of "Twenty-some lots" to Albert*: "I did not examine them but I looked at them very closely. I looked at the face of the deed"; that he had both deeds executed by Brown and notarized by Russo and gave both deeds to Mr. Greenfield; that he knew definitely that in these transactions Brown acted as a straw man for Albert. On cross-examination, it was established that Brown had married in August, 1923 and that in at least one deed to Oxford both Brown and his wife were the grantors but Wiser insisted that at the time Brown signed the two deeds he was a single man and not married. The credibility of Wiser was thus attacked. However, such credibility was for the resolution of the trial judge who saw and heard the witness and, in his judgment, Wiser was a credible witness. This was a matter within the judgment and discretion of the trial judge and we find no reason to disturb his ruling in this respect. Wiser further stated upon cross-examination that he "knew what the smaller deed contained".

The witness James Reekie outlined the extent of the search which he had made trying to ascertain the whereabouts of the deed from Brown to Albert and stated he was unable to locate the deed. In *Strause v. Braunreuter*, 14 Pa. Superior Ct. 125, 134, the late President Judge RICE, speaking for the Court, stated: "The degree of diligence to be used in the search for lost papers before secondary evidence can be given of their contents must depend largely upon the circumstances of the case. The loss or destruction of the document need not be proved beyond the possibility of mistake. . . . The inquiry is of a preliminary nature and is ad-

dressed to the discretion of the trial judge. When he is satisfied with the proof the appellate court will not reverse unless such proof is manifestly insufficient: . . . ." See also: *Gorgas v. Hertz,* 150 Pa. 538, 540, 24 A. 756; *Ray's Estate,* 304 Pa. 421, 432, 433, 156 A. 64; *Greggerson's Estate,* 344 Pa. 498, 501, 25 A. 2d 711. Reekie's testimony was sufficient to justify the court below in finding that a diligent search had been made for the lost deed.

In evaluating the testimony of Wiser we bear in mind that the one time existence and terms of a deed now allegedly lost must be proven by evidence "clear and indisputable" (*Friedline v. Friedline,* 275 Pa. 463, 467, 119 A. 545) or "clear and convincing" (*Greggerson,* supra, pp. 500, 501). However, that does not mean proof of the contents verbatim of the lost instrument. As Chief Justice SHARSWOOD speaking for this Court in *Emig v. Diehl,* 76 Pa. 359, stated: "It was not necessary that the witness should be able to state from memory all the words of the deed" (p. 374). See also: *Daly's Estate,* 55 Pa. Superior Ct. 488, 491.

We have carefully examined and scrutinized the testimony of Wiser and we are satisfied that such testimony fulfills the standard of clarity and conviction required in proof of one-time existence and the contents of a lost deed. That testimony, together with the fact that Albert paid the entire purchase price for the large tract of land—over $60,000—the fact that Brown paid nothing toward the purchase price, the fact that Brown was at the time an employee of Albert and, the fact that for at least five years Albert paid the real estate taxes on these 21 lots constituted sufficient evidence upon which to predicate a finding by the court below that Brown had by deed conveyed the title to these lots to Albert in 1923, that Brown acted simply as a straw man in the entire transaction and that the deed had been lost.

From this finding the court below properly concluded that at the time of Brown's death in 1927 he had no title to these lots which would pass to his heirs upon his death and, therefore, the conveyance from Winifred Brown's heirs to Wheatcroft-Rosengarten passed no title whatsoever.

## Were Wheatcroft-Rosengarten bona fide purchasers within the protection of the recording statutes?

At the time of the deed from Winifred Brown's heirs to Wheatcroft-Rosengarten two recording statutes were in effect, i.e., the Act of March 18, 1775, 1 Sm. L. 422, §1, as amended, 21 PS §444 and the Act of May 12, 1925, P. L. 613, §1, as amended, 21 PS §351.

The Act of 1775, supra, provided: ". . . every . . . deed and conveyance . . . which shall not be proved and recorded . . . shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration. . . ." The Act of 1925, supra, provides: ". . . Every . . . deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, . . . shall be adjudged fraudulent and void as to any subsequent bona fide purchaser . . . without actual or constructive notice. . . ."

The sanction of these statutes is that, if not recorded, a deed will be considered void as to any subsequent bona fide purchaser of the land. To bring one within the protection of the statutes it must be shown that one has the status of a bona fide purchaser. The court below held that Wheatcroft-Rosengarten were not within the protection of the recording statutes because they were not bona fide purchasers.

Within two weeks of the death of Winifred Brown and within several days of an impending tax sale of these lots, Wheatcroft-Rosengarten, strangers, visited

a nephew of Winifred Brown and questioned him extensively concerning Brown's family background and his former employment by Albert. According to this nephew's wife Wheatcroft-Rosengarten told them that "Jack Brown had been used as a straw man for Mr. Greenfield", that the lots were up for sale the next Monday and "unless they got our signatures on this deed before Monday the lots would go to Sheriff's Sale." After thus depreciating the title and emphasizing the possible loss of the lots through judicial sale Wheatcroft-Rosengarten effected a purchase of that nephew's share for $100 and the next day in New Jersey effected a purchase of the shares of the other nephew and niece for $100 each.

The total amount paid by Wheatcroft-Rosengarten for a one-half interest in these lots was $300, the purchase being made subject to the payment of unpaid taxes, tax and municipal liens accumulated against the lots. According to Wheatcroft-Rosengarten's own testimony, the total valuation of these lots ranged from $21,000 to $25,000 subject to the payment of approximately $4500 in unpaid tax liens. Accepting the lowest valuation and allowing $5000 for the satisfaction of the unpaid tax liens, a one-half interest in these lots have a value of $8000 or a value more than twenty-six times the purchase price.

In our view, the circumstances portrayed on this record fully justified the court below in finding that Wheatcroft-Rosengarten were not bona fide purchasers of these lots and, therefore, not within the protection of the recording statutes.

Lastly, it is urged that Albert is estopped from attempting to enforce an implied or resulting trust, as Wheatcroft-Rosengarten contend it is doing, by the five year limitation imposed by the Act of April 22, 1856, P. L. 532, §6, 12 PS §83. This argument is without merit. Albert does not base its claim on an implied

or a resulting trust. On the contrary, Albert takes the position that whatever trust was created by the placement of the title to these lots in Brown's name as straw man has been executed by the conveyance of such title by Brown to Albert by the deed in 1923.

The findings of the court below, confirmed by the court en banc, are supported by evidence sufficient in every respect and the action of the court below must be affirmed.

Decree affirmed. Costs on Wheatcroft-Rosengarten.