Rorison, Appellant, *v.* Davey.

Argued October 3, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John E. Evans, Jr.,* with him *Nathan Holstein* and *Evans, Evans & Spinelli,* for appellant.

*Harold E. Harper,* with him *Alter, Wright & Barron,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 8, 1946:

This is an appeal from the decree of the court below dismissing exceptions to its findings and dismissing the bill of complaint. The suit originated in a bill to set aside a transfer of certain real estate as a fraud upon the plaintiff creditor.

On January 20, 1940, the appellant, Alphonso Rorison, sustained a broken leg as a result of the defective condition of the sidewalk in front of property owned by Esther Davey. On April 10, 1940, suit was filed against the City of Pittsburgh and on April 24 of that same year, Esther Jane Davey was brought upon the record as additional defendant. On February 24, 1941, the latter conveyed her property consisting of a house and lot in Pittsburgh, to her daughter, Sarah Davey, the appellee, for a consideration, as recited in the deed, of "One Dollar and other good and valuable consideration". After a trial and retrial of the case, in both of which plaintiff recovered verdicts, judgment was finally entered against the mother, Mrs. Davey, on the plaintiff's verdict as of June 17, 1943. On June 22 of that same year, Mrs. Davey died.

It was admitted in the proceedings at the hearing that Mrs. Davey was rendered insolvent by the transfer to her daughter of the only asset which she had. The court found that at the time of the conveyance challenged Alphonso Rorison was a creditor of Mrs. Davey.

The court below found these facts:

"Some time during the summer of 1937, Sarah Davey advised her mother of her intention to leave home for the purpose of seeking steady employment, which she could not obtain locally."

"Some time during the Christmas season of 1937 Mrs. Davey and her daughter, Sarah Davey, entered into an oral agreement, by the terms of which said Mrs. Davey requested said Sarah Davey not to leave home for the purpose of seeking employment, but to continue living at home and to continue as a substitute teacher in the local schools and to help out with the finances at home and to render service in the care of the said Mrs. Davey. In consideration therefor said Mrs. Davey promised and agreed to make, execute and deliver a deed to said Sarah Davey for the property located at 1426 Sheffield Street, Pittsburgh, Pennsylvania."

In performance of that agreement Sarah Davey remained at home and during that period from January 1, 1938, to February 24, 1941, advanced her mother $1,982.08. This included the item of $576.94 for water and taxes; an item of $410.86 for store bills; and an item for $52.50 for doctor bills.

"In addition, Sarah Davey supported her mother generally."

"On behalf of her mother, the defendant also rendered personal services, which were of an extraordinary nature during said period from January 1, 1938, to February 24, 1941 . . ."

The court reached these conclusions of law:

"The agreement made between Jane Davey and Sarah Davey, her daughter, during the Christmas season of 1937, whereby Sarah Davey agreed to forego certain privileges and to remain at home with her mother, and to support her mother and care for her, in consideration of her mother's promise to convey the real estate at 1426 Sheffield Street, Pittsburgh, Pennsylvania, was a legally enforceable contract binding upon both parties."

"Sarah Davey performed her part of this contract by maintaining, supporting and caring for her mother from January 1, 1938, to February 24, 1941."

"Sarah Davey paid a fair and reasonable consideration for this property in advancing $1982.08 to her mother and in rendering many personal services during the period from January 1, 1938, to February 24, 1941, and foregoing her right to leave home and take employment elsewhere."

"The deed of February 24, 1941, from Esther Jane Davey to Sarah Davey was made for a fair consideration, and as to creditors was not a fraudulent conveyance."

The appellant relies chiefly upon the case of *Commonwealth v. Smith,* 344 Pa. 381. The facts there were as follows: During the period from December, 1934,

to October, 1937, the Commonwealth of Pennsylvania furnished old age assistance to Elizabeth Smith in the aggregate sum of $672. On July 14, 1938, she conveyed the house where she lived in Latrobe to her son, Gerald J. Smith, and Alice Smith, his wife, the consideration expressed in the deed being one dollar. On September 9, 1938, Elizabeth Smith died. Seeking to recover the sums paid to her the Commonwealth instituted suit against Barclay-Westmoreland Trust Company, administrator of her estate, in accordance with the provisions of section 15(a) of the Act of June 7, 1917, P. L. 447, and also brought proceedings in equity to set aside the conveyance as being in fraud of its rights as a creditor of the decedent. The court directed judgment to be entered in the sum claimed by the Commonwealth with interest, and decreed that the conveyance be set aside to the extent necessary to satisfy the judgment.

In sustaining the court below this court said:

"That the conveyance [by an insolvent] was made without a fair consideration was established prima facie by the fact that the consideration expressed in the deed was one dollar, and defendants, in their answer, did not deny the allegation in plaintiff's bill that a fair consideration would have been $2,100 . . . Gerald J. Smith testified, in somewhat vague fashion, that the conveyance had been made to reimburse him for moneys he had laid out for his mother's support over a long period of years. Even if true, and even though an agreement to that effect had been made in advance by mother and son, it would not defeat the rights of plaintiff, because, where a conveyance of property is made in consideration of an agreement to support the grantor in the future, it is invalid as to creditors if by the conveyance the grantor renders himself unable to pay his debts, the theory being that a conveyance whereby a debtor puts his property beyond the reach of his creditors under an agreement that it shall be devoted in any way to his own use is constructively fraudulent." (Citing 5 cases)

Judge SOFFEL of the court below correctly distinguished the *Smith* case from the instant case, in the following language: "An agreement to convey property upon consideration of future support is only invalid as to grantor's existing creditors. In the *Smith* case such creditors existed at the time the agreement to convey was entered into. In the instant case, at the time the conveyance was actually made the daughter had performed her part of the contract and had advanced money and services to her mother beyond the value of the real estate."

Among the cases cited in the *Smith* case were *Hennon v. McClane,* 88 Pa. 219, 222, and *Isett v. Maclay,* 265 Pa. 165, 169, 108 A. 610, 611. In the case of *Hennon v. McClane* the conveyance was held to be valid because, as Chief Justice AGNEW pointed out, there was no evidence to show that there were existing creditors at the time of the execution of the agreement. Likewise, in the instant case the agreement between the defendant, Sarah Davey, and her mother, wherein the daughter was to support and care for her mother in return for which the property would be turned over to her was made nearly 2½ years before Rorison became even a claimant against Mrs. Davey.

In the *Isett* case the facts were that in February, 1914, Mrs. Margaret C. Isett, a childless widow, 83 years old, residing on her farm in Huntingdon County, entered into a contract with her niece, Ellen C. Maclay, a trained nurse living in Philadelphia, that the latter should give up her profession and reside with and care for the former during the balance of her life, for which Miss Maclay was to have all of Mrs. Isett's property, including the farm, worth about $4,500 and $6,000 in personalty. This was duly transferred and the use thereof for life secured to Mrs. Isett. The niece carried out her part of the agreement. Mrs. Isett died three years later. The plaintiff was a nephew of Mrs. Isett's husband, and lived with them as a member of the family from the

death of his parents in 1884 until his marriage in 1897. Thereafter he continued to spend as much time as possible on the farm. He assisted his aunt in its management and did work thereon, also bought seed grain and other necessaries for the farm from time to time. He kept no account of the work so done or money so expended and never requested payment for either, and while she made some statements that he would be paid there was no agreement to that effect. In April, 1917, four months after the death of Mrs. Isett a stranger handed him an envelope in which was a note dated July 10, 1908, promising to pay to the order of Harry C. Isett, thirty-five hundred dollars, with interest. Plaintiff had no knowledge of the existence of the note until it was handed to him. Defendant had no knowledge of plaintiff's claim until after the death of Mrs. Isett and acted throughout in good faith. The bill was dismissed, the court finding that plaintiff was not a creditor of Mrs. Isett in February, 1914. Upon appeal to this court the action of the court below was sustained. We said:

"Under the Statute of Elizabeth a conveyance of land as here to secure future maintenance is void as to existing creditors [citing cases], but otherwise valid: [citing cases] So the real question here is, was plaintiff a creditor of Mrs. Isett in February, 1914? She was not indebted to him upon the note, for he had no knowledge of its existence, and, so far as appears, it was then in her possession and under her control so she might lawfully have destroyed it."

The case of *Albee v. Webster,* 16 N. H. 362, was cited with approval in *Houseman v. Grossman et al.,* 177 Pa. 453, 459. In the New Hampshire case it was held that:

"A conveyance on consideration in part that the grantee will support the grantor or members of his family is fraudulent and void as to existing creditors if the agreement for support furnishes a substantial part of the consideration; but if it be shown that the grantee has paid or secured the full value of the land apart from

the agreement for maintenance the obligation to maintain will not avoid the conveyance."

The case of *Downing v. Gault,* 8 Pa. Superior Ct. 52, held that those who are indebted cannot put their property out of their hands and avoid their creditors in order to provide future maintenance for themselves.

In *Seip v. Loubach,* 333 Pa. 225, 227, 228, this court said:

"In the absence of actual fraud a debtor, even though insolvent, may properly assign assets to a creditor as security for an antecedent debt although the effect will be to prefer that creditor." (Citing cases)

In *Schimmel v. Cohen,* 275 Pa. 117, where the defendant was insolvent at the time of the transfer of property to a creditor, this court said:

"However a man may prefer one creditor over another if he sees fit to do so and the mere fact of such preference will not invalidate the transaction in the absence of an allegation and proof of fraud."

In the instant case the findings of fact of the court below were all supported by competent evidence. The court's legal conclusions logically followed those findings.

The conveyance of property in this case was not (as it was in the *Smith* case) in consideration of an agreement to support the grantor *in the future.* When the conveyance was made in February 1941 the consideration for it was what Mrs. Davey already owed her daughter for *past* services and *past* advances of money to meet Mrs. Davey's obligations. That the daughter also agreed to render her mother services in the future is of no materiality as the services then already rendered and the advances already made constituted a fair consideration for the conveyance of the property. Appellant endeavors to attack the court's finding as to the value of the past services by arguing that since the daughter paid nothing for board and lodging in her mother's home the past services and advances did not

constitute a fair consideration. Inasmuch as the daughter was paying all the expenses of maintaining the home and furnishing the food, besides rendering extraordinary personal services to her mother, we, like the court below, find no merit in this argument. It must be borne in mind, as the court found, that the daughter also paid the bills for water and taxes, telephone, electric and gas supplies, and also for doctor bills and for painting, repairing, papering and plumbing, and these bills were for very substantial sums.

The court below succinctly summed up this case in the following language:

"When the agreement was entered into by Mrs. Davey and her daughter in 1937 no creditors and no rights of creditors were involved. The agreement as then made did not defraud creditors—either present or future. It was a valid, legally enforceable agreement. At the time that the claim of Rorison originated, Sarah Davey was already a bona fide creditor of her mother. It was therefore not fraudulent for the mother to secure payment to her creditor daughter by this conveyance, even though in so doing the grantor denuded herself of all real estate."

The decree is affirmed at appellant's cost.

Mr. Justice DREW and Mr. Justice JONES dissent.