## Waldman v. Redding

*Louis Silverman*, for plaintiff.
*Fitzhugh Lee Styles*, for defendant.

FLOOD, J., November 9, 1949.—. . . Bruce Redding in 1946 made a contract with plaintiff to construct a house for him, and on or before December 17, 1946, plaintiff paid Redding sums totalling $2,536 on account of this contract. Redding defaulted, and on December 8, 1947, plaintiff obtained judgment against him for $1,268.

On February 21, 1947, Redding conveyed to his mother, defendant, premises 802 N. 38th Street, Philadelphia, subject to a mortgage of $1,075. At that time plaintiff's claim was unliquidated and perhaps contingent, since there is no evidence that the default had occurred at the time of the conveyance. Yet plaintiff was a creditor of Redding within the meaning of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 39 PS §351. The act defines a creditor as anyone "having any claim, whether matured or un-

matured, liquidated or unliquidated, absolute, fixed or contingent".

At the time of the conveyance Redding was hopelessly insolvent, being indebted in a sum exceeding $100,000, and having very little in the way of other assets.

Redding had the power to prefer his mother as a creditor, if she was such, by transferring property to her even for an antecedent debt, in the absence of actual fraud: Seip et ux. v. Laubach et al., 333 Pa. 225 (1939) ; Rorison v. Davey, 355 Pa. 128 (1946) ; Varsity Building and Loan Association v. Ankele et al., 117 Pa. Superior Ct. 45 (1935). But under sections 3 and 4 of the Act of May 21, 1921, P. L. 1045, 39 PS §§353, 354, such a conveyance is fraudulent as to creditors where a fair consideration is not given, and while an antecedent debt constitutes fair consideration for this purpose, it does so only if its amount is not disproportionately small in relation to the value of the property conveyed.

Here the property was conveyed in satisfaction of a debt of $700 due from Redding to his mother, defendant. Whether this indebtedness existed at all is disputed but I find under the evidence that it did exist. The question then is whether this amount is disproportionately small compared with the value of the property.

The evidence is that the property was then worth $2,500. It was subject to a mortgage in the sum of $1,-075, leaving a net value of $1,425. It seems to me that a debt of $700 is disproportionately small, compared to a net property value over twice the amount of the debt.

But while normally such a conveyance should be set aside under the Act of May 21, 1921, P. L. 1045, sec. 9, 39 PS §359, provides in subsection (2) that "a purchaser who, without actual fraudulent intent, has given less than a fair consideration for the conveyance

. . . may retain the property . . . as security for re-payment". This apparently leaves it within the discretion of the court to make an equitable disposition in a case such as we have before us.

Defendant testified that she improved the property with borrowed money and placed a new mortgage upon it in excess of $2,000. While she should not be deprived of the value of the improvements, yet she cannot improve plaintiff out of his rights, except insofar as bona fide third parties have acquired rights through her. The mortgage is in excess of the amount of defendant's original equity in the property. Apparently it is held by a bona fide purchaser for value without notice. It might be argued from this that it should be ordered reconveyed so that plaintiff could issue execution against it. But this would probably deprive defendant completely of her equity, and would be a harsh solution.

In order to give defendant a chance to preserve her equity we think a conditional decree should be entered, giving defendant the option of paying to plaintiff the sum of $725, the amount by which the original consideration given by her was inadequate, within 60 days, with an order that upon her failure to do so plaintiff will be permitted to issue execution against the property with proper protection for defendant's interest. See Amadon v. Amadon et ux., 359 Pa. 434 (1948).

. . .

### Decree Nisi

And now, November 9, 1949, upon consideration of the pleadings and evidence in this case, it is ordered and decreed:

That defendant pay to plaintiff the sum of $725 on or before December 10, 1949, and

That in default of such payment plaintiff may issue execution upon his judgment of C. P. No. 3, Philadel-

phia County, September term, 1947, no. 1361, against premises 802 N. 38th Street, Philadelphia, Pa., . . . provided, however, that upon such execution sale, plaintiff shall receive $\frac{725}{2500}$ or 29 percent of the net proceeds of the sale, not to exceed the sum of $725, with interest from December 8, 1947, the balance of the net proceeds to be paid to defendant.