UNITED STATES of America

v.

**Margaret E. ST. MARY, as the Executrix of the Estate of Robert N. St. Mary, et al.**

**Civ. A. No. 69–832.**

United States District Court,
E. D. Pennsylvania.

Oct. 29, 1971.

J. Brian Ferrel, Atty., Dept. of Justice, Fred B. Ugast, Acting Asst. Atty. Gen., John J. McCarthy, Atty., Dept. of Justice, Washington, D. C., Louis C. Bechtle, U. S. Atty., Charles B. Burr, II, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Mark H. Scoblianko, Allentown, Pa., for defendant Lucille S. St. Mary.

Alphonso R. Romeika, Philadelphia, Pa., and E. Keller Kline, III, Allentown, Pa., for defendant Margaret E. St. Mary.

James J. McConnell, Allentown, Pa., for defendants Rosslyn Realty Co., Lehigh Valley Development Co., Robert P. Stoudt, and H. E. Stoudt & Sons, Inc.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW AND ORDER

JOHN W. LORD, Jr., Chief Judge.

This is a civil action by the United States of America to reduce to judgment certain federal income tax assessments against Robert N. St. Mary (hereinafter sometimes Taxpayer), and Margaret E. St. Mary; to set aside certain conveyances by the Taxpayer of his 50 percent interests in the stock of both Rosslyn Realty Company and Lehigh Valley Development Company to Lucille S. St. Mary; and to foreclose tax liens thereon.

After a four day trial to the Court sitting without a jury, briefs were ordered. Upon consideration of the testimony and the learned briefs submitted by both counsel, the Court enters the following:

### FINDINGS OF FACT

1. On February 18, 1966, a delegate of the Secretary of Treasury made timely assessments against Robert N. St. Mary and Margaret E. St. Mary for unpaid federal income taxes and interest for the years 1960 through 1962 in the amounts of $139,915.90.

2. On June 17, 1966, a delegate of the Secretary of Treasury made timely assessments against Robert N. St. Mary for unpaid income taxes and interest for

the year 1963 in the amount of $13,194.22.

3. Notices of these liens were filed in Lehigh County, Pennsylvania, on May 17, 1966, and in Northampton County, Pennsylvania, on May 18, 1966, with respect to the assessments for 1960 through 1962, and in Lehigh County, Pennsylvania, on September 8, 1966, with respect to the assessment for 1963.

4. Taxpayer died on May 25, 1969, and his first wife, Margaret E. St. Mary was substituted as defendant herein in place of Robert N. St. Mary on January 12, 1971.

5. A consent judgment was entered against Margaret E. St. Mary, individually and as executrix of the estate of the Taxpayer, covering the tax liabilities enumerated in Findings One and Two, plus statutory interest stipulated to by counsel for the Government and Margaret E. St. Mary.

6. Robert P. Stoudt and H. E. Stoudt & Sons, Inc., failed to either answer the amended complaint or to appear and defend at the time of the trial in this matter, and a default judgment was taken against them at that time.

7. Prior to June 6, 1965, Taxpayer was the owner of a 50 percent stock interest of Lehigh Valley Development Company, and of a 50 percent interest in the stock of Rosslyn Realty Company.

8. For several years prior to June 6, 1965, Taxpayer's tax returns were being audited by the Internal Revenue Service, and as a result, a deficiency was proposed by the investigating agent on June 4, 1965, in the amount of $109,000.00, which did not include interest.

9. Although Taxpayer's wife had instituted proceedings for child support, and Taxpayer was aware of this, he sold his 50 percent interest in a Nightingale Nursing Home and had the monthly income derived from the sale paid into the inactive Hamburg Realty Corporation, in order to prevent his creditors from attaching his share of the proceeds of the sale.

10. For a number of years prior to June, 1965, Taxpayer had incurred great indebtedness for hospitalization, lodging, plumbing bills, gasoline and miscellaneous items, and evidenced throughout not only a laxity in paying his bills, but an affirmative intent to avoid payment.

11. On or about January 5, 1965, Taxpayer, in connection with an unrelated tax matter in which he had failed to pay an employee's withholding taxes, filed a financial statement which indicated that his liabilities were far in excess of his assets.

12. For an extended period after 1963, Taxpayer experienced severe physical difficulties, which led to his being advised on numerous occasions by his physician that he would die.

12a. Taxpayer also developed emotional problems, as well as continuing to lead a totally disorganized financial life.

13. As a result of these facts, in late 1963, Lucille Schmuldt began to care for Robert N. St. Mary and to expend sums for his benefit.

13(a). Lucille Schmuldt provided Taxpayer with food, clothing, medicines, housing and spending money, from late 1963 to June of 1965.

14. On June 6, 1965, Taxpayer transferred his 50 percent interest in Lehigh Valley Development Company and his 50 percent interest in Rosslyn Realty Company to Mrs. Schmuldt.

15. On June 6, 1965, the date of the transfer, Lehigh Valley Development Company owned the Sears & Roebuck Building in Bethlehem, Pennsylvania, along with several parking lots. The total assets of the company were approximately $690,000.00 and it had consistently been able to meet its fixed liabilities, and its financial condition had remained stable for a period of about eight years.

16. On June 6, 1965, Rosslyn Realty Company owned the Bell Telephone building in Allentown, Pennsylvania, as well as several garages, all of which were leased to the Bell Telephone Company in Allentown. The total assets of the company were approximately $270,000.00,

and it had been able to meet its fixed liabilities, and its financial condition had been stable for about eight years.

17. In the only transaction involving Rosslyn Realty Company, Robert P. Stoudt loaned Robert N. St. Mary $1,000.00 on September 18, 1968, taking the 50 percent interest of Taxpayer as collateral security for the loan. At the present time, a half-interest in the corporation has a market value of between $15,000.00 and $20,000.00.

18. On or about May 20, 1966, Taxpayer furnished a revenue officer with a financial statement which indicated that his liabilities were substantially in excess of his assets.

19. In July of 1967 Margaret E. St. Mary formally divorced the Taxpayer.

20. In August, 1967, Taxpayer married Mrs. Lucille Schmuldt.

21. On February 15, 1968, Taxpayer pledged the stock of Lehigh Valley Development Company for an $11,500.00 loan from H. E. Stoudt & Sons, Inc. with the consent of Lucille Schmuldt St. Mary.

22. On September 18, 1968, Taxpayer pledged his interest in Rosslyn Realty Company as collateral for a guarantee by Robert P. Stoudt of a loan which Taxpayer obtained from a local bank.

23. The transfer of June 6, 1965, by Robert N. St. Mary to Lucille S. St. Mary, was a transfer of a valuable asset.

23(a). The transfer of June 6, 1965, was made while the liabilities of the Taxpayer were greatly in excess of his assets.

24. The transfer of June 6, 1965, by Taxpayer to the second Mrs. St. Mary was not supported by adequate or fair consideration.

25. The transfer of June 6, 1965, was intended to hinder and delay creditors of Robert N. St. Mary, including the United States of America.

26. The transfer of June 6, 1965, was made in contemplation of death and the subsequent exercise of dominion and control over his shares of stock in Lehigh Valley Development Company and Rosslyn Realty Company indicated that Robert N. St. Mary treated the stock as his own and in fact revoked the previous transfers to Lucille Schmuldt.

## DISCUSSION

The Court feels compelled to discuss four major areas of contention before entering its conclusions of law. The questions are whether or not the conveyance by Taxpayer to his second wife was fraudulent as to the Government; if not, was the conveyance revoked by Taxpayer; whether or not under the Pennsylvania "Dean Man's Rule" the testimony of the first three witnesses for the Government was competent and admissible; and whether a tape recording of Robert N. St. Mary's voice was admissible to show consideration and intent. In discussing these areas of law, the Court is indebted to counsel for both the Government and Mrs. St. Mary for their extraordinarily well-written briefs.

We find that the conveyance made by the Taxpayer may be set aside under Pennsylvania law as fraudulent. 39 P.S. § 354 provides

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

▆ Using these twin criteria of insolvency and lack of consideration, we find the conveyance could not have been a valid one. It has been amply demonstrated to the Court that Taxpayer was insolvent, as evidenced by his ever-increasing indebtedness and concomitant failure to pay bills. The consistent Pennsylvania view has been that the test of solvency is the present ability to pay debts, and not the ability to trade on credit, which Taxpayer did until the time of his death. *See, e. g.,* Larrimer v. Feeney, 411 Pa. 604, 192 A.2d 351 (1963).

Lucille Schmuldt St. Mary has denied the Government's allegation that Taxpayer was insolvent at the time of the

conveyance, because the tax liability had not been assessed against him. This is clearly not correct. Section 6151 of the Internal Revenue Code of 1954 provides that when a tax return is required, the person required to make such return must do so without formal notice or demand from the Government; he must, further, pay the tax due. In the event of a deficiency, as defined in Section 6211 of the Internal Revenue Code of 1954, the computation of the income tax deficiency by the Internal Revenue Service is considered as having been made by the taxpayer and the tax so computed is considered as the tax shown upon the taxpayer's return. Section 6211(b) (3), Internal Revenue Code of 1954. Money withheld during the taxable year is deemed payable on the 15th day of the fourth month following the close of the taxable year. Section 6513(b) of the Internal Revenue Code of 1954. In addition, interest and penalties are computed from the last date prescribed for payment of the tax. Sections 6601 and 6653(a) of the Internal Revenue Code of 1954. *See also,* United States v. 58th Street Plaza Theatre, Inc., 287 F.Supp. 475 (S.D.N.Y. 1968).

We are faced with the unavoidable conclusion that the date of paying one's taxes is a matter of public knowledge, and that such knowledge was certainly within the realm of experience of Taxpayer who was not only an attorney, but also held an advanced degree in the law of taxation.

The United States is deemed a creditor of the taxpayer from the date when the obligation to pay income taxes accrues. Coca-Cola Bottling Co. of Tucson v. C. I. R., 37 T.C. 1006 (1962), aff'd 334 F.2d 875 (9th Cir. 1964); United States v. Kaplan, 267 F.2d 114 (2nd Cir. 1959); United States v. 58th Street Plaza Theatre, Inc., *supra.*

In the *Plaza Theatre* case, the court was construing the New York Debtor and Creditor Law, McKinney's Consol. Laws, c. 12, §§ 270–278, which is, in all relevant portions, identical with the Pennsylvania Fraudulent Conveyance

Act, 39 P.S. §§ 351–363. We adopt the reasoning of that court that

> [t]o permit taxpayers to manipulate assets during the pendency of Tax Court or I.R.S. proceedings and still shield themselves from transferee liability merely because such transfers were made prior to final decisions, would be manifestly unjust. The better result places the government in essentially the same position as that of a private creditor. Successful creditors * * * are not limited to reaching only those assets transferred . . . after their claims have been reduced to a judgment.

*Id.* at 501. See also, United States v. Schofield, 152 F.Supp. 529, 532, n. 8 (E. D.Pa.1957); and 9 Mertens, Law of Federal Income Taxation, §§ 52.32, 52.37. Here, the Court is convinced that Taxpayer engaged in many schemes to delay the Internal Revenue Service in its investigation, all of which resulted in substantial delay in making the assessments against the Taxpayer, and provided him with ample time to manipulate his assets during the pending Internal Revenue Service review.

■ Moreover, 39 P.S. § 351 indicates that the term debts as used in the statute includes a contingent or unmatured liability; and for the purpose of the law of fraudulent conveyances, a contingent liability has the same status as one which is fixed. First National Bank of Marietta v. Hoffines, 429 Pa. 109, 239 A.2d 322 (1968); Fidelity Trust Co. v. Union National Bank, 313 Pa. 467, 169 A. 209, cert. denied 291 U.S. 680, 54 S.Ct. 530, 78 L.Ed. 1068 (1933). Therefore, even if the unassessed taxes were contingent, unmatured liabilities, they would still be taken into account in determining whether the grantor was insolvent.

The second Mrs. St. Mary has denied the Government's allegation that taxpayer was insolvent at the time of the conveyance. However, his tax liability was approximately $144,000.00 at the time of the conveyance, and, as noted

above, whether assessed or not, this sum was a liability in determining solvency.

Finally, in this regard, there was uncontradicted testimony that Taxpayer was indebted to the Allentowne House for lodging, to the Mary Fletcher Hospital in Vermont for medical expenses, to the Kershner Plumbing Company, and to the Town and Country Oil Company prior to the transfer. His legal practice was deteriorating as a result of ill health, and his first wife was required to take legal steps to secure child support. Revenue officials obtained financial statements showing that Taxpayer was insolvent six months before and eleven months after the transfer. It is obvious, therefore, that his assets did not exceed his liabilities.

It has been advanced by counsel for Mrs. St. Mary that her ministering to Taxpayer during times of great personal illness forms the basis for consideration to be found for the transfer.

■ A construction of 39 P.S. § 354 shows that certain principles are well settled within this controlling section of the applicable state law. When the conveyor is in debt at the time of the conveyance, the burden rests upon the grantee to establish by clear and convincing evidence that either the conveyor was solvent, Farmers Trust Company of Lancaster v. Bevis, 331 Pa. 89, 200 A. 54 (1938), and was by such conveyance not rendered insolvent; or that a fair consideration had been paid for the conveyance. First National Bank of Marietta v. Hoffines, *supra*; Peoples Savings & Dime Bank & Trust Co. v. Scott, 303 Pa. 294, 154 A. 489 (1931). This Court recognized this principle in Winter v. Welker, 174 F.Supp. 836 (E.D.Pa. 1959).

In the *Winter* case, the Court refused to accept checks showing payments over a seven month period between a husband and wife as clear and satisfactory evidence because none of the checks revealed the purpose for which the checks had been drawn. In the instant case, Mrs. St. Mary offered into evidence certain checks drawn to the order of certain drugstores or hospital associations, which she alleged were for medical expenses incurred on behalf of Taxpayer. We find no great evidentiary weight can be given to these documents as Mrs. St. Mary had said at her deposition that they did not exist; this is so particularly in view of the fact that she had commenced an action against Robert Stoudt on similar issues *prior* to her deposition.

The two cases cited by Mrs. Lucille S. St. Mary are not persuasive. In Holden v. Banes, 140 Pa. 63, 21 A. 239 (1891), a creditor sought to overturn a conveyance as being fraudulent as made in satisfaction of a promise made by a woman during coverture; and in Rorison v. Davey, 355 Pa. 128, 49 A.2d 357 (1946), a mother requested her daughter to remain at home to care for her.

■ Here, however, we are confronted with a woman under no obligation, or even request, to provide such services to Taxpayer. She testified under oath that the services were voluntary and rendered with no expectation of repayment. Consequently, there can have been no debt from Taxpayer to the then Mrs. Schmuldt. Even if we had found a pre-existing debt, which we did not, it would have to be based on clear and substantial evidence, Karkus v. Siefert, 169 F.Supp. 662 (D.N.J.1958), and more than the testimony of interested parties would have been required to meet this burden.

We think it clear, therefore, that the transfer by Taxpayer to Lucille Schmuldt St. Mary cannot stand.

■ Considering the transfer as a gift, we find also that there was a revocation of this gift which subsequently placed ownership of the stock in the hands of Robert N. St. Mary. At that time, regardless of the fraudulent conveyance, the Government's tax lien, which arose early in 1966, attached to the property pursuant to Section 6321 of the Internal Revenue Code of 1954, Title 26. Taxpayer attempted to sell the property in his own right to his business associate, Robert P. Stoudt, who admitted

at trial that he had actual notice of the Government's tax liens against Taxpayer prior to the alleged transfers of the property. See, Internal Revenue Code of 1954, Title 26, § 6323(b) (1) (A) (B). The stock was never endorsed over to Lucille St. Mary, and it was not until some years later that the close corporations involved had any knowledge of the purported transfer. Following the transfer, Taxpayer exercised power to vote the stock in question and eventually placed it as collateral security for two loans.

We are forced to conclude, therefore, that the transfer was revoked by Taxpayer, who, after the transfer, conducted himself as the owner of the stock.

Defense counsel attempted to block the introduction into evidence of testimony of several of the Government's witnesses, alleging that they were precluded from testifying by 28 P.S. § 322, popularly known as the Dead Man's Act,[1] which, in general, provides that if a party has died, his right has passed on to a party on the record who represents his interest, and any witness with an adverse interest is disqualified from testifying as to anything before the death, unless he falls within an exemption not relevant here.

The thrust of this argument rests upon the persuasive case of Melinder v. United States, 281 F.Supp. 451 (W.D. Okl.1968), where the court, in a situation strikingly similar to the one before this Court, refused to consider much of the testimony of Revenue agents, considering it to be prohibited by the Oklahoma Dead Man's Act, 12 O.S.1961, § 384, a statute comparable to the one before us.

Despite the strength of this argument, we must apply Pennsylvania law to this issue, and feel the state's Supreme Court the best interpreter of this statute. In the recent case of Clay Estate, 438 Pa. 183, 264 A.2d 632 (1970), quoting from Hendrickson Estate, 388 Pa. 39, 130 A. 2d 143 (1957), the court stated that for the exception to the general rule of competence to come into play, under the Dead Man's Act, three things were required:

"[T]he deceased must have had an actual right or interest in the matter at issue, i. e. an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest." *Id.* at 190, 264 A.2d at 636.

The second condition requires an adverse interest, not merely adverse testimony, i. e., the witness must be in a position that he will either directly gain or lose by the outcome of the proceedings. King v. King, 96 Pa.Super. 585 (1929), or that the record will be legal evidence for or against him in some other action, Braine v. Spalding, 52 Pa. 247 (1866); Hart, Schaffner & Marx v. Koch, 107 Pa.Super. 528, 164 A. 369 (1933).[2] Trustees of a charitable corporation have been held not to be disqualified as witnesses in an action between the corporation and a third party who has died, because they are merely agents. Groome's Estate, 337 Pa. 250, 11 A.2d 271 (1940). By analogy, the Revenue officers called were merely agents, with no direct gain or loss pos-

---

1. The Act reads, in relevant part, as follows:

   Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or con-

tract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy, * * * *Id.* at page 305.

2. *See* also, Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co., 218 F.Supp. 802, 805 (E. D.Pa.1963).

sible as a result of the outcome of the trial.

■ We turn, finally, to the admissibility into evidence of a tape-recording of the deceased Taxpayer, offered by defense counsel to show consideration for the transfer, or the intent underlying it.[3]

The nature of the tape was such that the Court was not informed as to who was present at the time of its recording, or who operated the machine. There was no introduction to the recording, which began with the Taxpayer reading off names and numbers. There was no specific reference to the Lehigh Valley Development Company, or to Rosslyn Realty Company, the tape merely referring to the Sears & Roebuck Building which was owned by the Lehigh Valley organization at the time the tape was allegedly made. A substantial portion of the tape was garbled, and the constant clicking on and off of the microphone was very noticeable.[4]

Without needlessly prolonging this opinion, it is sufficient for the Court to note that declarations after the act stating past intent or motive governing at the time of the act are not admissible, as they are considered self-serving declarations made by one in his own interest at a time and place out of court.[5]

Whereupon, in consideration of all of the above, the Court hereby enters the following:

## CONCLUSIONS OF LAW

1. The fifty percent stock interests of Robert N. St. Mary in Lehigh Valley Development Company and Rosslyn Realty Company transferred by him to Lucille Schmuldt on June 6, 1965, constituted assets out of which part of the tax liability due against Taxpayer to the United States could have been satisfied.

2. Robert N. St. Mary was insolvent at the time of the transfer of June 6, 1965.

3. Fair and valuable consideration was not given by Lucille S. St. Mary to Robert N. St. Mary in exchange for the stock interests above enumerated.

4. The transfer was intended by the Taxpayer to hinder and prevent the United States from satisfying its claim against the Taxpayer.

5. The transfer is void, and the assets involved are liable to the payment of any judgment entered in this proceeding in favor of the United States of America.

6. The preliminary injunction issued in this proceeding should be dissolved, and the shares of stock of Lehigh Valley Development Company and Rosslyn Realty Company should be turned over to the plaintiff to satisfy its tax liens.

---

3. Both counsel briefed at length the question of whether or not the Dead Man's Rule applies to the testimony offered by Lucille Schmuldt St. Mary. We feel that this would have presented a greater evidentiary question had the Court been inclined to recognize her claims of valid transfer. Having rejected the transfer as invalid, however, to merely discuss her testimony as improper with regard to the transfer would be at best repetitious.

4. The entire tape was not played because portions of it contained a personal message to Lucille Schmuldt St. Mary from Robert N. St. Mary. This deletion was agreed to by all counsel.

5. Other evidentiary points raised by both counsel for the Government and Lucille S. St. Mary are merely cumulative. See, e. g., n. 2, *supra.*