644 A.2d 201

**Randall L. ALLOWAY, Sr. D/B/A Alloway General Contractor,**

**v.**

**James B. MARTIN D/B/A Roof Consultant Service Interpleader of Tanya D. Billet,**

**Appeal of Tanya BILLET.**

Superior Court of Pennsylvania.

Argued April 6, 1994.

Filed July 1, 1994.

Allen H. Smith, York, for appellant.

Donald B. Swope, Hellam, for appellee.

Before ROWLEY, President Judge., and KELLY and POPOVICH, JJ.

POPOVICH, Judge:

This case involves an appeal from the order of the Court of Common Pleas of York County denying Tanya D. Billet's Petition to Interplead a Sheriff's adverse determination of *prima facie* title pursuant to Pa.R.Civ.P. 3201 *et seq.* We affirm.

The facts of record disclose that the plaintiff, Randall L. Alloway, took a default judgment against the defendant, James B. Martin, in the amount of $5,912.22 plus interest of $1,064.20. The plaintiff had the contents of the defendant's home posted for sheriff's sale on June 16, 1993. However, prior to sale, the defendant's daughter (Billet) filed an interpleader advising the Sheriff not to sell any of the property allegedly owned by the defendant and his wife, for "[t]his property was sold ... to [Billet] on May 21, 1990, ... [and] by way of th[e] Interpleader [she] claim[ed] title to th[e] property." RR. 17a.

The Sheriff conducted a hearing with all parties present, and, on September 16, 1993, ruled that "the property belonged to the Defendant at the time of the levy and [wa]s subject to sale." RR. 24a. Objections were filed by Billet and a hearing was held by the court to rule on their merits. At that proceeding, Billet testified that she was last employed in March of 1989 and was living in Ohio collecting public assistance ($403 per mo.) when she *loaned* her parents $4,000.00 in March of 1990 "to help them out with their bills." [1] Further, in exchange for the money advanced, Billet was given ownership of the furnishings located in her parents' home. Yet, she did not take physical possession of the contents "because ... [she] would not take all of the [parents'] furnishings ... [so] they wouldn't have nothing." RR. 69a.

Billet was asked by the court how the $3,874.64 figure assigned to the furniture appearing on the bill of sale was determined. She responded that she and her mother walked through the house and priced each item. When the court inquired further as to how the two came up with the $.64 in valuing the property, Billet answered, "I don't know...." RR. 70a.

Additionally, given that Billet had "loaned" her parents $4,000.00 in *March of 1990,* the court asked: "So, if that be the case, then this bill of sale in *May of 1990* had nothing really to

1. Billet claimed that the money was borrowed from her boyfriend and repayment was contemplated, but no written proof of reimbursement existed.

do with the actual transfer of the funds ...?" To which Billet retorted: "In mind-wise, yeah. We just didn't put everything down on paper, just between family and stuff like that. We did a lot of talking before it actually went down on paper." RR. 71a–72a. Nonetheless, Billet maintained that she owned the household furnishings. This was so despite the fact that she had signed an "Affidavit of Indigency" allowing her to waive a bond to stay the sale of the proposed property. It read that she owned *no* property.

When counsel for the plaintiff asked why she did not list that she owned property on the court affidavit, Billet responded: "I wasn't going to list the beds, the pictures. That's a lot to write." RR. 66a.

Once the defendant took the stand, he stated that he was in need of money, having come out of bankruptcy on June 11, 1990, and accepted the $4,000.00 loan from his daughter. The loan, according to the defendant, was secured by transferring ownership of his furnishings and documenting the same by way of a bill of sale dated May 21, 1990.

It was the contention of the defendant that the plaintiff's demand letter, which was followed by the Sheriff's serving a notice of default on May 16, 1990, did not prompt him to sell his household goods to his daughter on a bill of sale drawn May 21, 1990. It was the defendant's position that the sale had been contemplated prior to the receipt of the Sheriff's notice of sale and the plaintiff's demand letter. In fact, he testified that the May 21, 1990, bill of sale had been preceded by a preliminary agreement drafted on "household paper" left at his home.

The court, after hearing from Billet and the defendant, concluded that Billet "did not sustain her burden that legal title to the seized goods were in her name. The bare bill of sale, executed when the judgment creditor was 'knocking at the door', absent proof of ability to purchase through verification or otherwise, as well as the other underlying circumstances described above[, i.e., Billet's welfare status, receipt of $4,000.00 from an unnamed boyfriend, not reporting obtaining

property to the welfare authorities, not securing possession of the goods at the time of the alleged sale, and the claimed coincidence of the bill of sale arising only five (5) days after receipt of the demand letter], dictates a ruling against [Billet]." Order of Court, 10/19/93 at 3. This appeal followed and assails the sufficiency of the evidence denying Billet's interpleader.[2]

■ We are satisfied that the initial burden of going forward with proof in this interpleader was cast upon Billet. Pa.R.Civ.P. 3207(b); *King v. National Union Fire Insurance Co.*, Fayette L.J. 127, 130 (1968) (citations omitted). This meant that because the conveyor/defendant was in debt at the time of the conveyance, "the burden rest[ed] upon the grantee[/Billet] to establish by clear and convincing evidence that either the conveyor was solvent and was by such conveyance not rendered insolvent; or that a fair consideration had been paid for the conveyance." *United States v. Purcell,* 798 F.Supp. 1102, 1111 (E.D.Pa.1991) (Citation omitted).

■ Since fraud is usually denied, it must be inferred from all facts and circumstances surrounding the conveyance, including the relationship of the parties. See *Godina v. Oswald,* 206 Pa.Super. 51, 211 A.2d 91, 94 (1965); see also *Purcell,* supra, 798 F.Supp. at 113. And, fraud is a question of fact for the trier-of-fact to decide. *Golder v. Bogash,* 325 Pa. 449, 188 A. 837, 838 (1937) (Citation omitted). "For instance, a person deeply indebted, and on the eve of bankruptcy, makes over his property to a near relative, who is known not to have the means of paying for it. From these facts a [trier-of-fact] may infer the fact of a fraudulent intent to hinder and delay creditors. A presumption of fraud is thus created, which the party who denies it must repel by clear evidence, or else stand convicted. * * * A resort to presumptive evidence, therefore, becomes absolutely necessary to protect the rights of honest men from this, as from other invasions. * * * It is

---

2. It should be noted that historically sheriff's interpleader was designed to relieve the sheriff—and to a limited extent the judgment creditor—from actions for wrongful levies. *King v. National Union Fire Insurance Co.,* Fayette L.J. 127, 133 (1968).

no hardship upon an honest man [or woman] to require a reasonable explanation of every suspicious circumstance, and rogues are not entitled to a veto upon the means employed for their detection." *Shechter v. Shechter,* 366 Pa. 30, 76 A.2d 753, 755–56 (1950).

The defendant testified to his debtor status being discharged on June 11, 1990, a date subsequent to the alleged sale of his personalty to his daughter. RR. 74a. Thus, the burden was on Billet, as the grantee, to show by clear and convincing evidence either (1) that at the time of the conveyance the defendant was solvent, or (2) that Billet paid fair consideration. She did neither. *Purcell,* supra. In support of the absence of fair consideration, we quote with approval the court's Order dated October 19, 1993, denying Billet's interpleader; to-wit;

We have considered the proof offered by Tanya Billet, which consisted of a notarized bill of sale and her representation that she remitted to her step-father and mother a cash sum in the amount of $4,000.00 to her father in February of 1990 [—sic, March of 1990, RR. 71a].

She then contends that she and her mother, Beverly Martin, later proceeded through the entire household, valuing the items *sold* to her, and which resulted in a bill of sale to her, identified as Petitioner Exhibit No. 1. Tanya testified that the cash purportedly delivered to her mother and stepfather was not hers, but that she borrowed the $4,000.00, since she was on welfare, from an unnamed boyfriend. She further advised that she did not report these as assets belonging to her to the authorities, nor did she secure possession of the goods at the time of the alleged sale. It was not until the last several months that she came into possession of a limited number of these items. James Martin testified that the sale was affected to "secure the loan" from Tanya to Martin.

Given the above, and the claimed coincidence of the bill of sale arising only five (5) days after receipt of the demand letter, leads the Court to conclude that, indeed, the transaction was not a legitimate sale, the good faith or fraud of a

purchaser who leaves the goods in the hands of the debtor, may be determined. We find Tanya did not sustain her burden that legal title to the seized goods was in her name. The bare bill of sale, executed when the judgment creditor was "knocking at the door", absent proof of ability to purchase through verification or otherwise, as well as the other underlying circumstances described above, dictates a ruling against her.

We deny claimant's[/Tanya's] interpleader. We agree, with the addition that the relationship of the claimant/Tanya and the defendant/debtor and the self-serving remarks of the duo were properly for the trier-of-fact to consider and disbelieve. *Purcell,* supra; *Golder,* supra; *Godina,* supra.

Therefore, Billet did not establish "by clear and convincing evidence that the conveyor was solvent or was not rendered insolvent by the conveyance or that fair consideration had been paid for the conveyance." *Purcell,* supra, 798 F.Supp. at 1112 (Citation omitted).

Order affirmed.